IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JUDY LAMB,**

          Plaintiff,

    v.

**KAISER FOUNDATION HEALTH PLAN NORTHWEST,**

          Defendant.

Case No. 3:14-cv-01508-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiff has brought claims of: 1) sex discrimination; 2) retaliation; 3) age discrimination; 4) disability discrimination under O.R.S. 659A.112 and 42 U.S.C. § 12112; 5) failure to accommodate; 6) retaliation; and 7) FMLA/OFLA retaliation. Defendant Kaiser Foundation Health Plan moves for summary judgment [48]. Plaintiff is no longer pursuing her seventh claim and consents to its voluntary dismissal. For the reasons states below, I GRANT summary judgment as to the retaliation, failure to accommodate, and sex discrimination claims, and I DENY summary judgment for the age and disability discrimination claims. Plaintiff's FMLA/OFLA retaliation claims are DISMISSED.

## BACKGROUND

    Before her termination in 2013, Plaintiff Judy Lamb worked for Defendant Kaiser for over 28 years. For the majority of that time she had worked as a licensed practical nurse (LPN) in Kaiser's Occupational Health division. Since 2008, Ms. Lamb has reported to Karin Drake, an Occupational Health supervisor. Ms. Lamb believes that Ms. Drake treated her fairly from 2009 until January 2011. (Pl. Dep. 32:21-33:13.) Ms. Lamb has several health issues including

1 – Order and Opinion

problems with her knee and hip, diabetes, severe obesity, and major depression. Her walking is limited and she cannot stand for long periods of time.

As of 2009, Ms. Lamb worked at the Mt. Talbert Medical Clinic. In December 2010, Ms. Lamb twisted her knee, further limiting her movement. In late 2010, she applied for a LPN position at the Sunset Clinic; she began working there on January 3, 2011. Within a week, Ms. Lamb had aggravated her knee injury. On January 12, 2011, Ms. Lamb submitted a doctor's note stating she could not stand for longer than 30 minutes. Ms. Lamb acknowledges this prevented her from performing the LPN role. (Pl. Dep. 66:22-67:20) On January 18, Ms. Lamb met with her boss at the Sunset clinic, her union representatives, a human resource consultant, an integrated disability case load manager, and an ADA case manager to discuss possible accommodations. Ms. Lamb was placed in the Integrated Disability Management Program. To immediately accommodate her disability, she was placed in a 90-day "light duty" position.

By January 20th, Ms. Lamb was involuntarily transferred back to the Mt. Talbert clinic. The transfer was a lateral one, with no change in pay or benefits. Neither Ms. Lamb nor her union grieved the decision to return her to Mt. Talbert. A day after Ms. Lamb learned of her transfer, she made two complaints to Kaiser alleging violations of the ADA and the Age Discrimination in Employment Act. She continued on in her "light duty" role, working at a call center at Mt. Talbert. During this time, Senior Employee and Labor Relations Consultant Julia Williams sent Ms. Lamb a list of job openings each week and met with her once a month to find a new position that would work for Ms. Lamb's disability. Ms. Lamb went on unpaid medical leave at the end of her 90-day light duty assignment. Eventually, and after several attempts, Ms. Lamb passed the customer service and typing tests required to be a Patient Access Specialist ("PAS"). On May 11, 2011, Ms. Drake offered Ms. Lamb a PAS position. In her new position, Plaintiff remained

under the supervision of Ms. Drake but received less pay. As a PAS, Ms. Lamb was responsible for answering phone calls and responding appropriately to callers' requests, including making appointments and escalating calls ("triaging") to an RN when appropriate.

In her new role, Ms. Lamb made mistakes for which she received informal coaching. In addition, Ms. Lamb received a formal "Level 1" coaching in December 2011 for failing to secure an interpreter for an appointment that required one and for turning away a patient without properly documenting the call or triaging the call to an RN. Neither Ms. Lamb nor her union contested the coaching and Ms. Lamb still received a positive performance review at the end of 2011. Ms. Lamb's mistakes continued, including repeat mistakes on which she had previously been coached. In February 2012, Ms. Drake issued a Level 2 coaching corrective action. For both the Level 1 and Level 2 corrective action, Plaintiff admitted she had made mistakes but insisted she knew the work and couldn't think of any training she might need. ( Def. Ex. 13, p. 2.)

In October 2012, Ms. Lamb transferred to a different Kaiser call center, still working as a PAS. After several performance issues in her first week, the supervisor at that clinic transferred Ms. Lamb back after having determined her performance as a PAS was inadequate and that Plaintiff could not perform the job effectively. After she returned to Mt. Talbert, Ms. Lamb contends that she was again subject to stricter scrutiny than other employees by Ms. Drake. Plaintiff continued to make mistakes. In January 2013, Ms. Drake issued a Level 3 corrective action to Ms. Lamb; Ms. Lamb and the union did not grieve it.

In February 2013, Ms. Drake created a phone-based role for an LPN at Mt. Talbert. Ms. Drake was aware that Ms. Lamb wanted an LPN job and hoped to eliminate some of Ms. Lamb's

mistakes by repositioning Ms. Lamb as an LPN. (Drake Decl. ¶ 48.). On March 4, 2013, Ms. Lamb started work in the LPN position, which increased her pay, restoring it to its former level.

Her performance issues continued. On May 1, 2013, Ms. Lamb received a Level 4 corrective action for failing to triage patient calls correctly and failing to schedule a new patient according to department guidelines. As part of Level 4, Ms. Drake placed Ms. Lamb on a one-day "decision-making leave" to decide whether to improve or resign.

On May 14, 2013, Ms. Lamb took a call from a patient requesting a change of physician. Ms. Lamb refused to make an appointment, based on a note from Dr. Baertlein, the Chief of Occupational Health, in the patient's chart. However, Ms. Lamb neither triaged the call to an RN, in accordance with the department policy, nor did she communicate to anyone that the patient was upset. Later that day, the patient's attorney called and spoke to Ms. Lamb about the refused appointment. Plaintiff provided Dr. Baertlein's address to the attorney. Ms. Lamb did not tell her supervisor, the doctor, or anyone else that patient had an attorney or that the attorney had contacted Kaiser. Kaiser first learned of the incident in late May when it received a complaint from the state workers' compensation board and Dr. Baertlein received a complaint from the attorney. Kaiser terminated Ms. Lamb on June 19, 2013. The union grieved the termination but did not pursue it to arbitration.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate,

through the production of evidence listed in Fed. R. Civ. P. 56(c)(1), that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A plaintiff alleging employment discrimination "need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." *Chuang v. University of California Davis, Bd. of Trustees,* 225 F.3d 1115, 1124 (9th Cir. 2000).

Ms. Lamb's disparate treatment and retaliation claims are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). This analysis has three steps. The employee must first establish a prima facie case of discrimination. Next, the employer must articulate a legitimate, nondiscriminatory reason for the challenged action. Finally, if the employer satisfies this burden, the employee must show that the "reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. " *Chuang,* 225 F.3d at 1123-24.

## DISCUSSION

I.    Retaliation Claims

Ms. Lamb alleges Kaiser treated her differently and that she was terminated in retaliation for requests for reasonable accommodation and her complaints regarding disability discrimination in violation of 42 USC § 12203.

Ms. Lamb's retaliation claims fail because she is unable to establish the required "casual link" between any protected activity and adverse action. *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000). Ms. Lamb's only protected activity occurred in early 2011, when she made two complaints about her employment at the Sunset Clinic and requested an accommodation. Ms. Lamb points to four things to establish the causal link: 1) that Kaiser covered up its reason for transferring her back to Mt. Talbert; 2) that Ms. Drake was happy when Ms. Lamb left Mt. Talbert and upset when she returned; 3) that Ms. Drake opposed letting Ms. Lamb take qualifications tests as many times as needed for Ms. Lamb to obtain a new job and 4) that Ms. Lamb's disciplinary record started accumulating after the protected activity occurred. None of Ms. Lamb's arguments are sufficient to establish the necessary casual link.

The first two pieces of evidence occurred before the protected activity and as such they cannot establish causation. Ms. Lamb complained immediately after she was involuntarily transferred back to the Mt. Talbert clinic. Thus, Ms. Lamb's transfer occurred *before* her protected activity and so any alleged cover-up as to why the transfer happened cannot pertain to Ms. Lamb's protected activity. Similarly, any feelings Ms. Drake had about Ms. Lamb's departure and return to Mt. Talbert would have been experienced and expressed *before* the protected activity. Further, any evidence that Ms. Drake wanted to hold Ms. Lamb to a pre-existing standard is not evidence of retaliation, but instead evidence of adherence to policy. With no evidence of applying this pre-existing standard in a retaliatory way—such as only enforcing against people who complain—it does little to establish the causal link that Plaintiff must show.

Ms. Lamb's only remaining argument to establish the necessary causal link is the growth of her disciplinary record after her complaints. Kaiser points out that the Level 1 and Level 2

"coachings" that Plaintiff received are not considered discipline under the CBA with Plaintiff's union.  However, when viewed in the light most favorable to the Plaintiff, the earlier coachings could be seen as a superior laying the groundwork for future, more impactful discipline.  Even viewed in this light, the first Level 1 coaching occurred in December 2011, nearly a year after Ms. Lamb had made her complaints.  In addition, Ms. Drake still gave Ms. Lamb a positive performance review at the end of 2011 which Plaintiff agreed was "fair." (Pl. Dep. 129:12-131:6.)  As such, there is insufficient evidence to establish the needed causal connection.  *See Vasquez v. Country of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (no evidence of retaliation where protected activity occurred 13 months before the alleged adverse action, and there was no evidence of "surrounding circumstances that show[ed] retaliatory motive").

In addition, Ms. Lamb has stated that she does not assert a claim based on evidence prior to November 2012.  Resp. [55] at 9.  Given that, the first events on which she would base this claim would have occurred nearly a year and a half after her protected activities, far too remote in time to establish a causal connection without more evidence.  Finally, even if Ms. Lamb could establish a prima facie case, the rest of the *McDonnell Douglas* prongs would follow and Ms. Lamb cannot establish that Kaiser's proffered non-discriminatory reasons are mere pretext.  *See, e.g., Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731 (9th Cir.1986) (holding that a plaintiff may not "rely on the proximity in time between the protected activity and the adverse employment action to create a triable issue of fact after the employer has offered legitimate reasons for its actions").

Ms. Lamb has failed to establish the necessary causal link for either retaliation claim.  Defendant's motion for summary judgment on these claims should be GRANTED.

II.     Reasonable Accommodation

Ms. Lamb does not contend that Kaiser's accommodations did not fully account for her disability. Instead, Ms. Lamb's reasonable accommodation claim asserts that any time an employer accommodates a disabled employee by putting them in a new position, the employer must keep the employee in that position and make sure the employee succeeds. Ms. Lamb would have this be true even if the accommodated employee's performance issues were unrelated to her disability. The cases Ms. Lamb cites do not support her proposition. *McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 1999) (holding that an accommodation to deal with the underlying issue is necessary); *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001) (requiring a second accommodation when the first does not address the disability sufficiently); *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1117 (9th Cir. 2000) (where employer failed to entertain reasonable suggestions for accommodation) (reversed on other grounds). Instead, the cases hold when an accommodation does not fully address *the disability*, a second accommodation or change of approach may be necessary. Because Kaiser did reasonably accommodate Ms. Lamb's disability, and because her performance issues were unrelated to that disability, I GRANT summary judgment on Plaintiff's disability accommodation claim.

III.    Sex Discrimination

First, Ms. Lamb urges the Court that it must consider the combination of her protected characteristics rather than take each as a separate inquiry. The Ninth Circuit held that "where two bases for discrimination exist, they cannot be neatly reduced to distinct components. *Felix v. Boeing Co.*, 229 F.3d 1157 (9th Cir. 2000). Therefore, it is necessary to determine whether the employer discriminates on the basis of that combination of factors, not just whether it discriminates against people of the same race or of the same sex." *Id.* (quoting *Lam v. University*

*of Hawai'i,* 40 F.3d 1551, 1562 (9th Cir.1994)). I take the Ninth's Circuit's instruction as a serious exhortation to critically examine the facts of a mixed discrimination case for inferences that the discrimination is greater as a whole than the sum of the parts. However, the Ninth Circuit has not expressed this analysis as a per se rule that if a plaintiff can produce evidence for one type of discrimination, all other mere allegations of discrimination must survive summary judgment. Indeed, the purpose of summary judgment would be obliterated if such were the case. Therefore, I take it as given that there can be some cases where the inference established in *Lam* is completely unsupported by a set of facts. This is one of those cases.

Kaiser's alleged sex discrimination, if any, was not rooted in the combination of factors that Ms. Lamb alleges. Unlike in *Lam,* where the plaintiff was able to point to special stereotypes of Asian women as opposed to simply Asian-Americans or women, on this record Ms. Lamb has offered no special stereotypes that pertain to older, disabled women, which would not also apply to older, disabled men. *Lam,* 40 F.3d at 1562. The lack of special stereotype first weakens the inference created by *Lam*. But it is, Ms. Lamb's inability to show any facts of sexual discrimination that erases it completely.

Ms. Lamb offers almost nothing to support her allegations of sex discrimination. Ms. Lamb argues her own statement that "I think a lot of the people that were being harassed and disciplined were women over 40" is evidence of sex discrimination. It is not. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (noting that the non-moving party may not rely upon the pleading allegations). Ms. Lamb's argument surrounding Dr. Baertlein fares no better. Ms. Lamb has produced evidence that Dr. Baertlein did not like fat women, as demonstrated by a stray comment and other former employees' perceptions. (Pl. Dep. 244:16-248:17.) The Ninth Circuit has held a "stray remark" that is "uttered in an ambivalent manner

and [is] not tied directly to [the plaintiff]'s termination is insufficient to create an inference of discriminatory motive." *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438–39 (9th Cir. 1990); *see also Nesbit v. Pepsico, Inc.,* 994 F.2d 703, 705 (9th Cir. 1993). Here, Ms. Lamb has offered a stray remark by a man who was not in the chain of command for the decision to terminate; indeed, he worked for Northwest Permanente Medical Group, not for Kaiser.

Her circumstantial evidence is no stronger. Ms. Lamb could not identify anyone at Kaiser who she believed treated her differently because she was a woman. (Pl. Dep. 51 15-18.) Her boss was a woman; the other employees Ms. Lamb points to as receiving more favorable treatment were also women; the person who replaced her was a woman; and the other people she believes Kaiser discriminated against include two men and four women. Because Ms. Lamb has produced nothing to support her claim of sex discrimination, I GRANT summary judgment for Defendant on Plaintiff's sex discrimination claim.

IV.     Age and Disability Discrimination

Ms. Lamb can establish her prima facie case for age and disability discrimination through direct or circumstantial evidence or by showing 1) she belonged to a protected class; 2) she was qualified for her position; 3) she was subject to an adverse action; and 4) similarly situated individuals outside her protected class were treated more favorably. Davis v. Team Electric Co., 520 F.3d 1080 (9th Cir. 2008). In the light most favorable to the plaintiff, the only evidence that her performance was of sufficient quality to merit future employment is testimony that her former coworkers, Tina Tanner and Adrian Achong (described as "in their early 40s, slim and with no apparent disabilities"), had made similar mistakes and were still employed, thus demonstrating that Ms. Lamb's mistakes were not grievous enough to be fired. Ms. Lamb relies on Ms. Tanner's declaration that "Judy Lamb was written up for mistakes on the computer,

several were scheduling errors. Adrian and I made similar mistakes, supervisors knew we made those mistakes and I was not written up for them." (Tanner Decl. ¶ 5.) In addition, Ms. Tanner claims that older employees were targeted while she and Achong were not. (*Id. at* . ¶ 7.)

In satisfying the *McDonell Douglas* framework, Kaiser has produced ample evidence to show that they acted for a legitimate, non-discriminatory reason. Kaiser argues that they fired Ms. Lamb because she was not good at her job and have supplied evidence of Ms. Lamb's history of mistakes ranging from minor to extremely substantial throughout the year and a half before she was terminated. Because Kaiser has satisfied the second prong of the *McDonnell Douglas* framework, the burden shifts back to Ms. Lamb to show pretext.

Pretext is "showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production the trier of fact may still consider the evidence establishing the plaintiff's prima facie case "and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Burdine, supra,* at 255, n.1; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

Here, the evidence used to establish Ms. Lamb's prima facie case also goes to undercut Kaiser's legitimate non-pretextual reasons. In her prima facie case, Ms. Lamb showed evidence that younger, non-disabled people were being punished differently for the same mistakes. If Ms. Drake was creating a different record of discipline for people who were older or disabled, then, of course, different people would get terminated because of their long list of mistakes while the favored group would have no similar disciplinary record upon which to base a termination. Ms. Lamb has offered evidence that the same types of mistakes were being made by others but were

not being punished. For Kaiser to say that they fired Ms. Lamb because of her mistakes seems to ignore the allegation of different treatment from Ms. Lamb, Ms. Achong, and other employees who alleged that Ms. Drake mismanaged the disciplinary system to target older, disabled employees by documenting their mistakes more closely.

Because Ms. Tanner's declaration, along with the declaration of other former employees, taken in the light most favorable to the plaintiff, creates a material issue of fact, I DENY Defendant's motion for summary judgment on the age and disability related claims.

## CONCLUSION

Because Plaintiff has failed to create a genuine issue of material fact as to the retaliation, failure to accommodate, and sex discrimination claims, I GRANT IN PART Defendant's motion for summary judgment as to Plaintiff's retaliation, failure to accommodate, and sex discrimination claims [48]. In contrast, because Plaintiff has shown a genuine issue of material fact as to the age and disability discrimination claims, I DENY IN PART Defendant's motion for summary judgment for those claims. Lamb's seventh claim is DISMISSED.

DATED this __16th__ day of October, 2015.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge